UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SONG MAI,

     Petitioner,

     v.

BRIAN ENGLISH,

     Respondent.

CAUSE NO. 3:26cv171 DRL-SJF

<u>OPINION AND ORDER</u>

Immigration detainee Song Mai, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The Warden answered the petition, and Mr. Mai replied. The court now grants the petition.

Mr. Mai is a native and citizen of Vietnam who came to the United States in 1981. After a conviction for theft, he was ordered removed from the United States in 2001 under 8 U.S.C. § 1227(a)(2)(A)(iii) for committing an aggravated felony. He was released from immigration detention after about 30 days on January 2, 2002, on an order of supervision because Vietnam would not issue a travel document for him [7-1]. According to the petition, after his release, Mr. Mai married a United States citizen in 2019 and has worked as a truck driver for the past ten years.

Mr. Mai was arrested by ICE agents on September 9, 2025, and was detained. Mr. Mai filed this habeas petition in February 2026, approximately five months after he was re-detained. He argued his detention was unlawful because his removal was not

reasonably foreseeable. Because he does not have a Vietnamese birth certificate, passport, or any other identity documents from Vietnam, he argued Vietnam will not accept him for return. He alleged that Vietnam repatriates few pre-1995 immigrants, and that the 2020 Memorandum of Understanding between the United States and Vietnam, establishing a process of review and issuance of travel documents for Vietnam citizens ordered removed, is insufficient to establish that his removal is reasonably foreseeable.

About six months into his detention, on March 2, 2026, an ICE officer conducted a custody review and determined Mr. Mai should remain in custody because his removal was expected in the reasonably foreseeable future [7-1]. In a status report filed April 3, 2026, the Warden (through federal counsel) represented that the government intended to remove Mr. Mai to Vietnam, but it was unlikely to occur within the next thirty days [6]. In the Warden's answer to the petition filed April 14, 2026, the Warden states, "[u]pon information and belief, ICE ERO Chicago has requested travel documents from the Government of Vietnam." The Warden, however, provides no evidence that a travel document has been requested.

The Warden first argues that this court lacks subject matter jurisdiction to consider the petition based on 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 2-3 (N.D. Ind. Mar. 26, 2026); *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Vu v. English*, No. 3:25cv999, 2026

2

WL 194171, 2-3 (N.D. Ind. Jan. 26, 2026) (discussing § 1252(b)(9) and § 1252(g)); *Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 1-2 (N.D. Ind. Jan. 14, 2026) (discussing § 1252(g)).

Turning to the merits, 8 U.S.C. § 1231(a) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Mai ended in 2002. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Mai's detention is authorized by § 1231(a)(6), the statute the Warden relies on for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit

conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the

5

old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Mr. Liang was detained for about 30 days until he was released on a supervision order in January 2002. Back then, ICE could not obtain a travel document for him to return to Vietnam. That period of detention, and its conclusion, complied with the standards from *Zadvydas*, and no one has challenged this. From January 2002 until September 2025, when he was detained again, neither side reports any progress toward his removal.

Even after his detention in September 2025, there is no indication that travel documents have been requested. The Warden states "upon information and belief" that travel documents were requested but does not provide a declaration to that effect from someone in a position to know. The court appreciates counsel's statements as officers of the court, but they are not evidence, *see United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008), nor typically are statements merely on information and belief without some provision or explanation of the information on which that belief is formed. And even if

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

travel documents had been requested by the time the Warden answered the petition in April 2025, six months have passed since Mr. Mai was re-detained, and we are now approaching nine months of re-detention with no seeming progress toward removal or update as to any likelihood of removal.

The government's efforts may end up being successful, but the court cannot find this to mean, given this record, that there is a reasonable likelihood of removal in the foreseeable future. There has been no update to suggest that this hope of receiving travel documents has any real traction, why it has taken so long already without an answer, what specific efforts have been devoted to pursue this particular request, or what other steps have been (or will be) taken to make removal a reasonably foreseeable prospect, much less that there are, tied up in any of this, foreign policy judgments that merit unique deference. Mr. Mai already has been in custody beyond any presumptively reasonable period.

The only reasonable finding on this record is that immigration enforcement could not remove Mr. Mai to Vietnam in 2001, at any time for nearly two decades thereafter, and that removal efforts reinitiated in September 2025 are bearing no fruit, or even seeds that might foreseeably grow into fruit. Mr. Mai has met his burden. The Warden has not rebutted this showing. Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision.

For these reasons, the court:

(1) GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Mai Song on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **June 18, 2026**, and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Mai Song's release.

(3) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

June 17, 2026                    *s/ Damon R. Leichty*
                                Judge, United States District Court